IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**JOHN WELDON BURNS,**

    **Plaintiff,**

**v.**                                                **CIVIL ACTION NO. 1:07cv7**
                                                                  (Judge Keeley)

**MS. BLANCO, Health Services Assistant,**
**DR. WATERS, Health Services Director,**
**LEWIS BRESCOACH, Health Services Administrator,**
**V. FERNANDEZ, Case Management Coordinator,**

    **Defendants,**

## REPORT AND RECOMMENDATION

### I. Procedural History

The pro se plaintiff initiated this case on January 7, 2007, by filing a civil rights complaint against the above-named defendants. The plaintiff seeks relief for the defendants' alleged indifference to his serious medical needs and negligent treatment of his medical conditions. On March 2, 2007, the plaintiff was granted permission to proceed as a pauper. The plaintiff paid his initial partial filing fee on March 13, 2007.

On March 19, 2007, the undersigned conducted a preliminary review of the file and issued a Report and Recommendation, in which it was recommended that the plaintiff's complaint against Dominic A. Gutierrez, Sr., Susan S. McClintock, and Doctor Ramirez be dismissed with prejudice. However, it was recommended that the remaining defendants, Blanco, Waters, Brescoach, and Fernandez be served. Following objections by the plaintiff, the Court adopted the Report and Recommendation. Defendants, Gutierrez, McClintock and Ramirez were terminated from the case, and summonses were issued for the remaining defendants.

On October 18, 2007, the defendants filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. In addition, the defendants filed a Memorandum of Law in support of their Motion, together with three exhibits, including medical records. A Roseboro Notice was issued on November 19, 2007. To date, the plaintiff has not filed a reply to that notice.

Accordingly, this case is before the undersigned for a report and recommendation on the defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment.[1]

## II. The Complaint

The plaintiff alleges that in 1996, while incarcerated at FCI Butner, he was diagnosed with a hernia and placed on light duties. In December of 2004, he was transferred to FPC Seymour Johnson, where he alleges he injured the hernia while working in the food service department. The plaintiff contends that after several visits to sick call, surgery was recommended to correct the hernia, and an appointment was made to see a surgeon in 2005. However, the surgery never took place, and the plaintiff was transferred to FCI Morgantown on February 2, 2006.

The plaintiff maintains that upon his arrival at FCI Morgantown, he explained to the defendants that ne needed surgery performed to alleviate the pain that his hernia caused him. The plaintiff alleges that the defendants advised him that surgical repair was not warranted. The plaintiff further alleges that the only treatment he received was Tylenol and directions to perform light duties. The plaintiff further alleges that although the hernia "cripples and paralyzes" him, the defendants have consistently refused

---

[1] Also pending is the plaintiff's third Motion to Dismiss, which was filed on November 21, 2007. Like his first two motions, the plaintiff does not specify the type of dismissal requested or state the grounds for the motion. Because the undersigned has concluded that the defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgement should be granted, no further discussion of the plaintiff's Motion has been undertaken.

2

to have the hernia surgically corrected. Accordingly, the plaintiff alleges that the defendants have violated his Eighth Amendment rights. As relief, he seeks a declaratory judgment, an injunction ordering the defendants to transfer him to a local hospital for a diagnosis of his hernia problem, compensatory damages, and punitive damages.

**III. Defendants' Motion to Dismiss or in the Alternative for Summary Judgment**

In support of their Motion, these defendants allege that the plaintiff has failed to exhaust his mandated administrative remedies on the issues raised in the complaint. In addition, the defendants allege that the plaintiff's claims do not rise to the level of a violation of the Eighth Amendment's prohibition against cruel and usual punishment. Accordingly, they request that the plaintiff's claims be dismissed.

**IV. Standard of Review**

**A. Motion to Dismiss**

In ruling on a motion to dismiss the Court must accept as true all well-pleaded factual allegations. Walker v. True, 399 F.3d 315 (4th Cir. 2005). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 4506 (1957).

**B. Summary Judgment**

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only

4

"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

**V. ANALYSIS**

**A. Exhaustion of Administrative Remedies**

A Bivens action like an action under 42 U.S.C. §1983, is subject to exhaustion of administrative remedies as required by the Prison Litigation Reform Act (PLRA). Porter v. Nussle, 534 U.S. 516, 524 (2002). Under the PLRA, a prisoner bringing an action "with respect to prison conditions" under 42 U.S.C. §1983 must first exhaust all available administrative remedies. 42 U.S.C. §1997e. Exhaustion as provided in §1997e(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). While the phrase "with respect to prison conditions" is not defined in 42 U.S.C. §1997e, the Supreme Court has determined that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516 (2002).[2] Moreover, exhaustion is even required when the relief the prisoner seeks, such as monetary damages, is not available. Booth, 532 U.S. at 741.

The United States Supreme Court has held that proper exhaustion of administrative remedies is necessary, thus precluding inmates from filing untimely or otherwise procedurally defective administrative grievances or appeals and then pursuing a lawsuit alleging the same conduct raised in the grievance. See Woodford v. Ngo, 126 S.Ct. 2378 (2006). In Woodford, the United States

---

[2]In Porter, an inmate sued the correctional officers who had severely beaten him. The inmate alleged that the correctional officers "placed him against a wall and struck him with their hands, kneed him in the back, [and] pulled his hair." Porter, 534 U.S. at 520.

Supreme Court clarified that the PLRA exhaustion requirement requires proper exhaustion. Id. at 2382. The Court noted that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 2386. The Court found that requiring proper exhaustion fits with the scheme of the PLRA, which serves three main goals: (1) eliminating unwarranted federal court interference with the administration of prisons; (2) "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Id. at 2388. As the Court concluded, "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." Id.

The actions of the defendants regarding improper medical care constitute actions "with respect to prison conditions" within the meaning of the PLRA, and the requirement of exhaustion of administrative remedies applies to those actions and the alleged effects of those actions.

The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint with the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the Warden's response, he may appeal to the regional director of the Federal Bureau of Prisons (BP-10) within 20 calendar days of the Warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the office of the General Counsel (BP-11) within 30 calendar days of the date the Regional Director signed the response. An inmate is not deemed to have exhausted his administrative remedies until

he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F.Supp. 941, 943 (D.Md. 1997).

On May 31, 2006, the plaintiff filed a Request for Administrative Remedy number 414906-F1, asking for surgery to repair his umbilical hernia. (Doc. 26-6). In a response dated June 16, 2006, the plaintiff was informed that he hernia was reducible on its own and did not require surgery at that time. (Id.). On July 10, 2006 the plaintiff appealed the warden's response. This initial appeal was rejected at the regional level for technical reasons. The plaintiff resubmitted his appeal in the correct form on August 10, 2006. Review of his appeal indicated that FCI Morgantown's Utilization Review Committee and Clinical Director had evaluated the request for surgery and deemed it not indicated or warranted at that time. (Doc. 26-7, p.2). Therefore, the Regional Director denied the plaintiff's appeal in a response dated October 31, 2006. (Id.) On October 30, 2006, the plaintiff appealed the Regional Director's response to the Central Office of the Bureau. The Central Office rejected the appeal because the plaintiff did not submit a complete set of four carbonized copies of his BP-11. In addition, the plaintiff did not submit a copy of his Regional Appeal or the Regional Director's response. (Doc. 26-3, pp. 2-3). The plaintiff was given 15 days to resubmit his appeal with all defects corrected. (Doc. 26-3, p. 3). On November 27, 2006, the plaintiff resubmitted his appeal to the Central Office. The plaintiff again did not submit his appeal in proper form because the BP-11 was not legible. Therefore, the submission was rejected, and the plaintiff was afforded another 15 days to resubmit his appeal in legible form. (Id.) On December 14, 2006, the plaintiff submitted his Central Office appeal for a third time and again did not submit it in proper form. Specifically, he omitted the BP-11 and sent in xeroxed copies of his request. In addition, he did not submit a

complete set of four carbonized copies of the appeal form.  Although the plaintiff was given yet another fifteen days to resubmit his appeal on the proper BP-11 carbonized form, he never did. (Id.). Therefore, the Central Office has not reviewed his request for an administrative remedy regarding hernia surgery, and the plaintiff has not been provided a response from the final stage of the administrative remedy process.

Accordingly,  the plaintiff clearly failed to properly exhaust his administrative remedies with regard to the allegations raised in his complaint. The plaintiff's failure to do so bars the claim and dismissal is appropriate.  See Woodford v. Ngo, 548 U.S. 81, 90 (2006); Booth v. Churner, 532 U.S. 731, 741 (2001)(Where inmate exhausted his grievance at the first level but failed to complete all three levels of the Pennsylvania grievance process, dismissal for failure to exhaust was appropriate).

However, regardless of whether the plaintiff's claim is exhausted or not, it is clear that the plaintiff has failed to state a claim against any of the defendants upon which relief can be granted.

**B.  Eighth Amendment, Deliberate Indifference to a Serious Medical Condition**

To state a claim under the Eighth Amendment, plaintiff must show that defendants acted with deliberate indifference to serious medical needs of a prisoner.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  A cognizable claim under the Eighth Amendment is not raised when the allegations reflect a mere disagreement between the inmate and a physician over the inmate's proper medical care, unless exceptional circumstances are alleged.  Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).  When dealing with claims of inadequate medical attention,

the objective component is satisfied by a serious medical condition.

A medical condition is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir.1987) *cert. denied,* 486 U.S. 1006 (1988).[3]

A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth 834 F.2d at 347. Thus, while failure to provide recommended elective knee surgery does not violate the Eighth Amendment, Green v. Manning, 692 F.Supp. 283 (S.D. Ala.1987), failure to perform elective surgery on an inmate serving a life sentence would result in permanent denial of medical treatment and would render the inmate's condition irreparable, thus violating the Eighth Amendment. Derrickson v. Keve, 390 F.Supp. 905, 907 (D.Del.1975). Further, prison officials must provide reasonably prompt access to elective surgery. West v. Keve, 541 F. Supp. 534 (D. Del. 1982) (Court found that unreasonable delay occurred when surgery was recommended in October 1974 but did not occur until March 11, 1996.)

The subjective component of a "cruel and unusual punishment" claim is satisfied by showing

---

[3] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997).

deliberate indifference by prison officials. Wilson, 501 U.S. at 303. "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844.

Even if this court were to assume that the plaintiff herein suffers from a serious medical need or condition, the medical records establish that he has received thorough and timely medical treatment for this condition during his incarceration at FCI Morgantown. Therefore, the plaintiff's Eighth Amendment rights clearly have not been violated.

Dr. Michael Waters ("Dr. Walter")is the Clinical Director at FCI Morgantown and has been a licensed physician since July 1988. Dr. Waters has reviewed the plaintiff's medical records, dating back to his arrival at FCI Morgantown, and summarized the same. (Doc.26-8). His declaration and the medical records establish that the plaintiff was received at FCI Morgantown on February 2, 2006. The Medical Summary provided to FCI Morgantown stated that the plaintiff's diagnosed medical conditions included Type II Diabetes and hypertension. The plaintiff's prescriptions included Metformin, Glyburide, Ecotrin, and Lisinopril. Additionally, medical staff noted that the plaintiff may wear abdominal supports for his hernia. (Doc. 26-8, p. 3). Because he has chronic medical conditions, he was assigned to the Chronic Care Clinic at FCI Morgantown. Inmates assigned to the Chronic Care Clinic are seen at least every three month to monitor their condition. (Doc. 26-8, p.2).

The day following his arrival at FCI Morgantown, the plaintiff filed an Inmate Request for

Triage asking to see the doctor regarding a hernia. Martha Blanco ("P.A. Blanco")assistant examined the plaintiff and diagnosed him with an umbilical hernia. She recommended that he take Tylenol for any hernia related pain and scheduled him for a February 10, 2006, appointment with his medical provider. P.A. Blanco also noted that the plaintiff's hernia was "reducible," meaning that it can be manually placed back into its normal anatomical position. (Doc. 26-8, p 3).

On April 9, 2006, the plaintiff reported to Health Services for his first Chronic Care Clinic appointment. During the examination, the plaintiff denied any nausea or vomiting and stated that he did not have any difficulty eating. Dr. Waters noted that the plaintiff's pain was normal for his condition and recommended that he wear an abdominal waist band. He instructed the plaintiff to return to Health Services immediately if he developed increased pain or nausea and vomiting. Finally, Dr. Waters instructed the plaintiff not to lift anything over ten (10) pounds and provided him with a lower bunk pass. (Doc. 26-8, p.4.).

On February 10, 2006, the plaintiff reported to Health Services for follow-up on his February 3, 2006, request for medical evaluation of his hernia. The plaintiff stated that he experienced pain when lifting heavy objects but had no sudden weight loss and no difficulty sleeping. After the examination, P.A. Blanco noted that the plaintiff's umbilical hernia was four (4) centimeters in diameter. She advised the plaintiff to follow Dr. Waters instructions and take Tylenol for pain. She also advised him to return to health Services if the hernia did not disappear when he lay down because this would indicate that it may have become non-reducible. Finally, she provided the plaintiff with a permanent work restriction, support belt, and instructed him to return to Health Services as needed. (Id.).

On February 22, 2006, the plaintiff submitted an Inmate Request for Triage complaining that his boots were making his big toe sore. P.A. Blanco examined him and determined that he had a foot

ulcer. The plaintiff was treated on that dates as well as February 23, 24, 25, 26, and 27, 2006 for his foot ulcer. On none of those dates did he raise any complaints about his hernia or abdominal pain. (Doc. 26-8, p. 5).

On February 28, 2006, the plaintiff submitted an Inmate Request for Triage complaining about abdominal pain related to his hernia. The plaintiff indicates that he was unable to do heavy physical work and requested work with less physical demands. He was scheduled to see his medical provider the next day. On March 1, 2006, the plaintiff reported to Health Services for followup. He was given a three day work idle so that his foot ulcer could be healed completely before he returned to wok. However, he did not raise any issues regarding his hernia during the appointment. (Doc. 26-8, p. 5).

On March 3, 2006, the plaintiff submitted another Inmate Request for Triage complaining of pain from his hernia. Medical staff examined him and noted that his abdomen was soft and non-distended. Staff recommended that he take over the counter pain medication as needed and scheduled a follow-up appointment wit his medical provider for March 7, 2006. However, there is no indication that the plaintiff returned for the March 7, 2006 appointment. (D0c. 26-8, p. 5).

On March 15, 2006, the plaintiff submitted an Inmate Request for Triage complaining of a broken tooth and foot issues. He was treated for his foot issues in Health Services on March 15, 16, 18, 19, 20, 21, 23, 24, 25, 26, 27, 28, and April 5 and 27. At none of these appointments did the plaintiff raise any complaints or concerns regarding his umbilical hernia or abdominal pain. (Doc. 26-8, pp. 5-6).

On May 9, 2006, the plaintiff reported to his regularly scheduled Chronic Care Clinic appointment. Dr. Waters examined him and found his umbilical hernia to be stable and easily reducible. Dr. Waters advised the plaintiff to take Motrin as needed for pain and to wear his hernia

support. (Doc. 26-8, p. 6).

On June 5, 2006, the plaintiff submitted an Inmate Request for Triage requesting pain medication for his hernia. The plaintiff was provided with a slip to purchase Tylenol in the commissary and scheduled for an appointment on June 9, 2007. However, there is no indication that the plaintiff appeared for that appointment. (Doc. 26-8, p. 6).

On June 12, 2006, the plaintiff completed an Inmate Request for Triage complaining of foot issues. P.A. Blanco examined and treated him. The plaintiff did not raise any complaints about abdominal pain or his hernia. (26-8, p. 6).

On June 13, 2006, the plaintiff reported to Health Services for followup regarding his foot issues. During the examination, the plaintiff complained about pain from his umbilical hernia and stated that he had increased pain since his incarceration. P.A. Blanco noted that the plaintiff had a small, reducible umbilical hernia and recommended that he use a hernia belt during the day to reduce the pain. (Doc. 26-8, pp. 6-7).

On June 16, 2006, FCI Morgantown's Utilization Review Committee met and discussed the plaintiff's medical condition, and the potential need for surgery to repair his hernia. The committee determined that the plaintiff's condition did not require surgery at that time. (Doc. 26-8, p. 7).

On August 9, 2006, the plaintiff reported for his regularly scheduled Chronic Care Clinic appointments. Dr. Waters noted that the plaintiff's hernia had not changed, was stable and easily reducible. Dr. Waters recommended that the plaintiff continue taking Motrin as needed for pain relief. (Doc. 26-8, p. 7).

On November 9, 2006, the plaintiff reported to the Chronic Care Clinic for routine followup. Dr. Waters noted that the plaintiff stated that he felt the same with no changes and that he tried to

13

balance his diet with exercise to the best of his ability. The plaintiff complaint about his right foot but did not have any complaints regarding his hernia. In addition, Dr. Waters Found that the plaintiff's hernia was stable without any changes. (Doc. 26-8, p. 7).

On April 9 and 24, 2007, the plaintiff submitted an Inmate Request for Triage requesting to have his glasses fixed and see a dentist. Medical staff scheduled him to be seen by a dentist and optometrist. The plaintiff did not submit any request for medical attention regarding his hernia. (Doc. 26-8, pp. 7-8). On May 2, 2007, the plaintiff received approval by the Utilization Review Committee for a tooth extraction. (Doc. 26-8, p. 8).

On May 23, 2007, the plaintiff reported to the Chronic Care Clinic for routine followup. The plaintiff did not have any complaints regarding his umbilical hernia. Dr. Waters examined the plaintiff and found his hernia to be stable and asymptomatic. Finally, on August 22, 2007, the plaintiff again reported to the Chronic Care Clinic for routine followup and reported that he still took over the counter medicine for pain relief. Physical examination revealed that his hernia was stable and reducible. (Doc. 26-8, p. 8).

Accordingly, the record before the Court does not support the plaintiff's allegations of indifference to his umbilical hernia. As the foregoing summary of the plaintiff's medical treatment at FCi Morgantown demonstrates, the plaintiff was seen by the medical staff there on more than thirty occasions. At no time did he complain of significant pain, and he was prescribed a support belt, placed on a permanent work restriction, and advised to take Motrin or Tylenol as needed for the pain. While the plaintiff may want additional testing or surgical treatment, that fact does not give rise to an Eighth Amendment violation. See Chance v. Armstrong, 143 F.2d 3rd 698, 703 (citing Dean v. Coughlin, 804 F.2d 207, 215 (2nd Cir. 1986) and Estelle 429 U.S. at 106. Furthermore, the plaintiff's complaint that

14

he should receive surgery to repair his umbilical hernia amounts to a disagreement with the medical judgment of staff at FCI Morgantown. A disagreement between an inmate and his physician as to what medical care is appropriate does not state a claim for deliberate indifference to medical needs. See Wright v. Collins, 766 F.2d 841 (4th Cir. 1985)(finding that a disagreement between an inmate and a physician over the proper medical care did not establish a claim of deliberate indifference).

In conclusion, the voluminous medical records supplied by the defendants demonstrate that the plaintiff has received timely and proper care for his multiple physical complaints. Nothing in the record or in the plaintiff's complaint establishes any facts sufficient to support a finding that the defendants, Waters, Blanco, and Brescoach have been deliberately indifferent to his medical needs, and accordingly, the plaintiff's complaint as it relates to these defendants should be dismissed for failure to state a claim.

C. **Defendant Fernandez**

Liability in a Bivens case is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001)(internal citation omitted). Thus, in order to establish personal liability under Bivens, a plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)

In this case, plaintiff names as defendant, Veronica Fernandez ("Fernandez"), his case management coordinator. A declaration submitted by Fernandez indicates that she has been employed as the Case Management Coordinator at FCI Morgantown since November 2004 as was also the

15

Administrative Remedy Coordinator at that institution from July 2005 to October 1, 2007. (Doc. 26-15). In his complaint, the plaintiff alleges that Fernandez consistently denied him all assistance through her arguments and responses for the Warden on all the administrative remedies that he filed. The plaintiff further alleges that her actions prevented him from having any success in receiving surgery for his hernia.

In her position as the Administrative remedy Coordinator, Fernandez was responsible for assigning Requests for Administrative Remedy to the appropriate subject matter expert for review and preparation of a response. (Doc. 26-15). However, she was not responsible for investigating the plaintiff's claims or preparing a response. Furthermore, she never had the authority to make medical decisions for inmates. (Id.). Therefore, Fernandez did not have the kind of personal involvement required to state a <u>Bivens</u> claim. Accordingly, the plaintiff cannot establish a claim against this defendant.

## VI. <u>RECOMMENDATION</u>

In consideration of the foregoing, it is the undersigned's recommendation that the plaintiff's complaint (Doc. 1) be **DISMISSED** under 28 U.S.C. §§ 1915A and 1915(e) for failure to state a claim; the defendants' Motions to Dismiss, or in the Alternative, Motions for Summary Judgment (Doc. 26) be **GRANTED**; and the plaintiff's Motion to Dismiss (Doc. 36) be **DENIED as Moot**.

Any party may file within ten (10) days after being served with a copy of this Recommendation with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Court. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a

judgment of this Court based upon such Recommendation Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: April 16, 2008

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE